UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY M. WROBEL,

                              Plaintiff,

               -vs-                                     03-CV-277C(SC)

COUNTY OF ERIE;
DOUGLAS NAYLON, Individually and in his
official capacity as a County Employee;
and DANIEL RIDER, Individually and in his
official capacity as a County Employee,

                              Defendants.

---

APPEARANCES:    CHIACCHIA & FLEMING, LLP (CHRISTEN ARCHER PIERROT, ESQ., of Counsel), Hamburg, New York, for Plaintiff.

                          OFFICE OF THE ERIE COUNTY ATTORNEY (KRISTIN KLEIN WHEATON, ESQ., of Counsel), Buffalo, New York, for Defendants County of Erie and Daniel Rider.

                          LIPSITZ, GREEN, FAHRINGER, ROLL, SALISBURY & CAMBRIA (LINDA R. HASSBERG, ESQ., of Counsel), Buffalo, New York, for Defendant Douglas Naylon.

**INTRODUCTION**

This case is before the court on the defendants' motion to dismiss the amended complaint (Items 38, 40), and plaintiff's motion for permission to file a second amended complaint (Item 48). This action was originally brought in Supreme Court, Erie County, on March 19, 2003, and was removed to this court on April 8, 2003 (Item 1). In an order filed December 17, 2004 (Item 35), the court dismissed plaintiff's cause of action under the New York State Human Rights Law, and directed plaintiff to file an amended complaint so as

to draw his claim under Title 42 U.S.C. § 1983 with more specificity. In the amended complaint, filed January 18, 2005 (Item 36), plaintiff alleged that he was transferred from his position at the Aurora facility of the Erie County Public Works Department, Highway Division, in retaliation for the exercise of the rights of freedom of speech, political affiliation, and other intimate association guaranteed by the First Amendment. Defendants have now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has opposed the motion and has moved for permission to file a second amended complaint so as to add a claim under § 1983 for the violation of his Fourteenth Amendment right to due process. Oral argument was heard on September 12, 2005.

## BACKGROUND and FACTS

As stated in the amended complaint, plaintiff began his employment with the County of Erie in 1978, and was employed as a blacksmith with the Department of Public Works, Division of Highways, assigned to the Aurora highway barn. Item 36, ¶ 5. Following the 1999 election of Joel Giambra as Erie County Executive, in 2000 defendant Naylon became the Aurora Senior District Highway Engineer, and defendant Rider became the Deputy Highway Commissioner. *Id.,* ¶¶ 11-13. Plaintiff alleges that Naylon and Rider were political appointees unqualified for their positions. *Id.,* ¶ 14.

Plaintiff alleges that he became the target of harassment and intimidation because of his professional and personal alliance with a co-worker, Paul Rebrovich. Item 36, ¶ 19. He also alleges that Naylon stated that he wished to "get rid of all the old guys" at the Aurora facility, meaning those hired by the previous County Executive. *Id.,* ¶ 24. Plaintiff alleges that on or about January 31, 2001, defendant Naylon "harangued" him for

approximately two hours, questioning him regarding his opinions about the new County administration and other employees. *Id.,* ¶¶ 27-31. Plaintiff also alleges that Naylon forced him to agree to complete transfer papers, stating that it would be in plaintiff's best interests to transfer to another facility. *Id.,* ¶ 32.

Plaintiff alleges that in February 2001, Naylon questioned his timecard and began monitoring his telephone calls. Item 36, ¶¶ 36-37. In March 2001, Naylon presented plaintiff with a list of six disciplinary charges, all of which plaintiff alleges were untrue and unsubstantiated. *Id.,* ¶ 38. On March 5, 2001, a hearing was held in Naylon's office regarding the charges. Plaintiff alleges that Naylon "could not offer anything to substantiate the charges . . . ." *Id.,* ¶ 39. Plaintiff's union representative asked to see plaintiff's personnel file, but Naylon could not produce the file. *Id.* On March 6, 2001, plaintiff received a letter stating that he had been transferred to the Tonawanda plant. *Id.,* ¶ 41. Plaintiff alleges that his transfer was disciplinary in nature, in violation of County practice, policy, and procedures. *Id.,* ¶ 40. This transfer forced plaintiff to drive an additional 35 miles each way to and from work. *Id.,* ¶ 42.

Following his transfer, in March 2001, plaintiff asked to see his personnel file, and the request was unanswered. Item 36, ¶ 47. In April 2001, Rider sent plaintiff two letters, both advising plaintiff to complete sick leave papers in advance of using sick time. *Id.,* ¶¶ 48-49. In May 2001, plaintiff contacted the then-Chairman of the Erie County Democratic Party and the New York State Attorney General's Office regarding alleged corruption at the Aurora facility and harassment of non-Giambra appointees. Item 36, ¶¶ 51-53. Plaintiff also met with an FBI detective regarding his complaints in August 2001. *Id.,* ¶¶ 55, 60.

Plaintiff alleges that on July 11, 2001, he was "interrogated" for approximately one hour by defendant Rider. *Id.,* ¶ 54. Additionally, plaintiff alleges that he was questioned by a Deputy Sheriff regarding a theft at the Aurora plant. Plaintiff states that Naylon implicated him as a possible perpetrator. *Id.,* ¶ 56.

Plaintiff, through his union, challenged his transfer in an arbitration proceeding. Defendants argued that the transfer was not grievable, and the grievance was dismissed. Item 36, ¶ 43. Plaintiff alleges that Rider confronted plaintiff's wife at the arbitration in April 2002, calling her a "liar." *Id.,* ¶ 58. Plaintiff also alleges that Rider "encouraged and bribed employees to testify against" plaintiff during the arbitration. *Id.,* ¶ 59. Plaintiff alleges that, some time after the arbitrator's decision, a high-ranking County official testified before an Erie County grand jury that plaintiff's transfer was disciplinary. *Id.,* ¶ 44. In November 2004, plaintiff's name appeared on a list of employees targeted for lay-off by County Executive Giambra. *Id.,* ¶ 62.

On March 9, 2005, Defendants Erie County and Rider filed a motion to dismiss the amended complaint pursuant to Fed. R.Civ. P. 12(b)(6) (Item 38). Defendant Naylon filed a similar motion on March 11, 2005 (Item 40). All defendants contend that plaintiff has failed to state a cause of action under § 1983 for violation of the First Amendment. Plaintiff filed a response in opposition to the motions on May 2, 2005 (Item 47). Additionally, he sought permission to file a second amended complaint (Item 48). Specifically, plaintiff stated that he "inadvertently failed to include a cause of action for violations of plaintiff's due process rights as guaranteed by the Fourteenth Amendment" in the amended complaint, although he states that he alleged such a claim in the original complaint. *Id.,*

¶ 16. On May 20, 2005, all defendants filed a joint reply and a response to the motion to amend the amended complaint (Item 51).  Finally, on July 13, 2005, plaintiff filed an affirmation in support of the motion for permission to amend (Item 56).  Oral argument on all motions was heard on September 12, 2005.  For the reasons that follow, the motion to dismiss the amended complaint is granted, and the motion for permission to amend the complaint is denied.

## DISCUSSION

**1.  Motion to Dismiss the Complaint**

In his amended complaint, plaintiff alleges three separate violations of the First Amendment.  First, plaintiff alleges that defendants "actively, and motivated by political animus, and in retaliation for [plaintiff's] actions in failing to 'go along' with [defendants'] unlawful activities, participated in concert in a selective and targeted harassment of [plaintiff]."  Item 36, ¶ 66.  Plaintiff alleges that he was targeted "solely because of his actual or perceived political beliefs and because of his actual or perceived support of and friendship with members of the former" County administration in violation of the First Amendment rights to free speech and political association.  *Id.,* ¶¶ 68, 71.  As a second cause of action, plaintiff alleges that he was harassed because he spoke out against the unlawful treatment of employees at the Aurora facility and about the fraudulent and illegal activities of the individual defendants, in violation of the First Amendment right to free speech.  *Id.,* ¶¶ 75, 79, 81.  Finally, as a third cause of action, plaintiff alleges that he was subjected to harassment because his wife spoke out against the unlawful treatment of employees at the Aurora facility and the activities of the individual defendants, in violation

of his First Amendment right of freedom of association. *Id.,* ¶¶ 85 - 90.

In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied,* 531 U.S. 1052 (2000). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994).

Defendants argue that plaintiff has failed to establish a First Amendment violation because he has failed to allege protected speech or associational conduct of public concern. They also contend that plaintiff has not alleged a causal connection between the alleged protected activity and an adverse employment decision. Finally, the defendants argue that plaintiff has failed to allege a claim for the violation of the right to intimate association.

In order for a public employee to state a claim for retaliation for the exercise of First Amendment rights, he must allege that his speech or associational conduct must be of some public concern, that he suffered an adverse employment action, and that there is a causal connection between the protected speech or conduct and the adverse employment action. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977); *Cobb v. Pozzi,* 363 F.3d 89, 102 (2d Cir. 2004). Whether an employee's speech or associational conduct addresses a matter of public concern must be determined by its content, form, and context, as revealed by the whole record. *Connick v. Myers*, 461 U.S.

138, 147-48 (1983).  More specifically, speech will be considered to address a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern to the community . . . ."  *Id*. at 146.  "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."  *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).  "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  *Connick v. Myers*, 461 U.S. at 146.  Speech or associational conduct pertaining to internal personnel disputes and working conditions is generally held not to involve matters of public concern.  *Id.* at 147.

Turning first to plaintiff's claim of freedom of association, plaintiff alleges that he was harassed because of his actual or perceived political beliefs and association with the former County administration and with other employees who were supporters of the previous administration.  Specifically, plaintiff has alleged that he was harassed because of his personal and professional alliance with Paul Rebrovich and other employees.  He alleges he was questioned by Naylon about Rebrovich and other employees (Item 36, ¶ 27), and Naylon attempted to force plaintiff to state that Rebrovich was the source of problems at the Aurora facility.  *Id.,* ¶ 31.  Plaintiff alleges that Naylon "was attempting to make a non-political work-site into a political scene with employees being forced to declare their allegiance to [County Executive] Joel Giambra."  *Id.,* ¶ 34.  Plaintiff alleges that Naylon then began to monitor plaintiff's telephone calls, questioned his timecard, and brought

Case 1:03-cv-00277-JTC   Document 59   Filed 02/27/06   Page 8 of 16

disciplinary charges against him, which resulted in his transfer.  *Id.,* ¶¶ 36 - 40.

The Supreme Court has recognized that individuals have a First Amendment freedom to associate in order to advance shared beliefs.  *See Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418-19 (2d Cir. 2004) (citing *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)).  Among the most highly protected forms of association is that undertaken to express opinions on public issues.  *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982).  Such First Amendment expression "'is more than self-expression; it is the essence of self-government.'"  *Id*. (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)).

Defendants characterize plaintiff's association with Rebrovich and other employees not as a political or expressive association, but merely a friendly working relationship.  Thus, defendants argue, plaintiff has not alleged any protected associational conduct of public concern.  Plaintiff does not allege that he and Rebrovich were members of the same political party.  Similarly, he does not allege that he was harassed because his party affiliation differs from that of the individual defendants or the County Executive.  *Compare Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir. 2003) (political party affiliation is protected by the First Amendment); *Notaro v. Giambra*, 2005 WL 711875, *7 (W.D.N.Y. March 28, 2005) ("the failure to promote, transfer, or recall a low-level public employee after layoffs based on his or her political affiliation is an impermissible infringement on First Amendment rights.") (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 (1990) (failure to hire based on political affiliation)).  Essentially, plaintiff alleges that he was the subject of harassment because he was hired by the previous County administration and

8

was friendly with his co-workers, who were also hired by the previous administration. Social relationships, without any expressive conduct or any involvement in public issues or matters of public concern, do not constitute protected associational activity for purposes of *Connick*. *See Piscottano v. Murphy*, 317 F. Supp. 2d 97, 105-06 (D.Conn. 2004) (plaintiffs alleged that employer took disciplinary action based on their membership in motorcycle club–court found that such membership did not constitute associational conduct of public concern). Having failed to allege associational conduct of public concern, plaintiff has merely stated that he had a difference of opinion with the new County management. Accordingly, the first cause of action is dismissed.

Turning to plaintiff's claim of freedom of speech violations, plaintiff has alleged that he engaged in speech of public concern when he spoke out regarding the defendants' negative treatment of employees hired by the former administration. Plaintiff spoke to his union president in December 2000 and advised him that Naylon was "trying to get rid of him." Item 36, ¶ 25. Plaintiff also spoke with his union steward following Naylon's two-hour "harangue" on January 31, 2002. *Id.,* ¶ 33. It is well settled that complaints regarding a personal employment situation are not constitutionally protected. *Saulpaugh v. Monroe Comm. Hosp.,* 4 F.3d 134, 143 (2d Cir. 1993) (sexual harassment complaint not protected speech where it was "personal in nature and generally related to her own situation" rather than alleging "system-wide" discrimination), *cert. denied*, 510 U.S. 1164 (1994) (quoting *Ezekwo v. NYC Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir.), *cert. denied*, 502 U.S. 1013 (1991)); *Knight v. City of New York*, 303 F. Supp. 2d 485, 501 (S.D.N.Y. 2004), *aff'd* 147 Fed. Appx. 221 (2d Cir. 2005) (complaints of harassment and discrimination were

related solely to personal employment situation and are not protected speech). Complaints to a union representative, even involving alleged violations of law, have been found not to be protected speech. *See Hanig v. Yorktown Cent. School Dist.,* 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (complaint to union representative related primarily if not exclusively to plaintiff's desire to protect her job and/or her reputation–any motivation to advance a public interest was tenuous and incidental). Thus, these allegations of protected speech, in which plaintiff complained to union representatives regarding the defendants' conduct, related to plaintiff's personal employment situation and are not protected by the First Amendment.

Plaintiff also alleges that he engaged in protected speech when he contacted the Democratic Party Chairman, the New York State Attorney General's Office, and the FBI. *See* Item 36, ¶¶ 51, 52, 53, 55. Assuming for purposes of this motion that these statements constituted protected speech of public concern and that he suffered an adverse employment action, plaintiff nonetheless has failed to establish the third element of his § 1983 claim–a causal connection between the protected speech and the adverse employment action. To succeed on his retaliation claim, plaintiff must show that the protected speech was a substantial or motivating factor in the adverse action. *Petrario v. Cutler*, 187 F. Supp. 2d 26, 32 (D.Conn. 2002). Plaintiff has failed to make such a showing because he has not sufficiently alleged an adverse employment action following the expression of protected speech. Plaintiff's contacts with the County Democratic Party Chairman, the State Attorney General's Office, and the FBI took place in May, July, and August 2001. Item 36, ¶¶ 51-53, 55, 60. For purposes of a First Amendment retaliation claim, an adverse employment action includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Phillips v. Bowen*, 278 F.3d 103,

109 (2d Cir. 2002) (quotation omitted).  Plaintiff does not allege any of these "classic examples" of adverse employment actions. *Id*.  Rather, he alleges that he suffered harassment at the hands of the individual defendants following his transfer in retaliation for the expression of his First Amendment freedoms.  Harassment is not a "classic example" of an adverse employment action.  *Id.*[1]  In *Phillips*, the Second Circuit held that:

> [I]n order to prove a claim of First Amendment retaliation in a situation other than the classic examples of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, plaintiff must show that (1) using an objective standard; (2) the total circumstances of [his] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.

*Phillips,* 278 F.3d at 109.  A merely discourteous work environment does not rise to the level of a First Amendment retaliation. *Id*.  However, "a combination of seemingly minor incidents [can] form the basis of a constitutional retaliation once they reach a critical mass." *Id*.  "Incidents that are relatively minor and infrequent will not meet the standard, but otherwise minor incidents that occur often and over a longer period of time may be actionable if they attain the critical mass of unreasonable inferiority." *Id.*

The harassment alleged by the plaintiff following his expression of arguably protected speech in May, June, and July 2001 fails to "attain the critical mass of unreasonable inferiority" so as to constitute an adverse employment action.  The only allegations of harassment that post-date the arguably protected speech include the questioning of plaintiff by a Sheriff's Deputy regarding a theft at the Aurora barn (*Id.,* ¶ 56),

---

[1] Similarly, plaintiff's transfer to another facility, without a loss of pay or seniority, is not an adverse employment action because it was not "tantamount to a demotion." *See Patrolman's Benevolent Ass'n v. City of New York*, 74 F. Supp. 2d 321, 335 (S.D.N.Y. 1999).  Employment actions which constitute nothing more than a mere inconvenience or an alteration of job responsibilities are not actionable. *See Galabya v. New York Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir.2000).

Rider's hour-long "interrogation" of plaintiff (*Id.,* ¶ 54), and the alleged confrontation at the arbitration hearing (*Id.,* ¶ 58). None of these allegations, either individually or collectively, rises to the level of an adverse employment action. Instead, they show only a discourteous relationship between the plaintiff and his supervisors. The constitutional protection of an employee's right to free speech and association should not be interpreted as an attempt to constitutionalize employee grievances. *Connick v. Myers*, 461 U.S. 138, 154 (1983). In any event, it cannot be said that the defendants' actions, following plaintiff's expression of arguably protected speech, created an "unreasonably inferior and adverse" work environment. *Phillips,* 278 F.3d at 109.

Finally, plaintiff alleges that his right to intimate association has been violated by defendants in retaliation for his wife's expression of protected speech. In reliance on *Adler v. Pataki,* 185 F.3d 35 (2d Cir. 1999), plaintiff argues that he suffered adverse employment action in the form of harassment because of his wife's disclosure of defendants' unlawful employment and business practices. In the complaint, plaintiff alleges that his wife "spoke out against the unlawful treatment of employees at the Aurora facility and the fraudulent and illegal activities committed by" the individual defendants. Item 36, ¶ 85.

In *Adler,* the Second Circuit found that a retaliatory discharge based solely on litigation instituted by one's spouse is actionable under the First Amendment. *Adler v. Pataki,* 185 F.3d at 45. The court reasoned that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." *Adler v. Pataki,* 185 F.3d at 44. In *Adler,* however, the plaintiff presented "ample evidence . . .

to support his claim that the defendants acted against him solely in retaliation for his wife's litigation activity." *Adler,* 185 F.3d at 45.

Here, plaintiff has failed to allege a *prima facie* case of retaliation based on his wife's protected activity. He fails to specify the details of his wife's disclosure of illegal activities at the Aurora barn, including the content of the disclosure, when it occurred, and to whom the statement was directed. Consequently, plaintiff has failed to allege a causal connection between his wife's alleged protected speech and the alleged harassment suffered by the plaintiff.

The court previously allowed plaintiff the opportunity to amend the complaint and elaborate on his First Amendment claim. Plaintiff has failed to allege sufficient facts to establish retaliation in violation of his First Amendment freedoms. As it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief, defendants' motion to dismiss is granted.

**2.  Motion for Leave to Amend**

Plaintiff also argues that he should be granted permission to amend his complaint a second time to allege a violation of the Fourteenth Amendment right to due process. Plaintiff complains that he was subjected to disciplinary measures, including transfer of employment, despite not having been served with "adequate charges" and without a meaningful opportunity to be heard. He further states that defendants sought to corrupt the arbitration proceedings by encouraging and bribing other employees to testify against plaintiff at the arbitration. I note that plaintiff challenged his transfer through the grievance process with the assistance of his union, and the matter was found to be non-grievable.

Thus, defendants argue that plaintiff was afforded all the process he was due. Additionally, defendants argue that plaintiff has not shown the deprivation of a property interest in a transfer that involved no loss of rank or pay.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it [or a] unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Such interests arise not from the Constitution but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Id.; see also Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005). When an individual claims to have a property interest related to employment, courts may look to the relevant contract of employment–either explicit or implicit–or its functional equivalent to determine whether the individual has such a property interest. *See Roth*, 408 U.S. at 578; *Perry*, 408 U.S. at 601-02; *Ciambriello v. County of Nassau*, 292 F.3d 307, 314 (2d Cir. 2002). But "not every contractual benefit rises to the level of a constitutionally protected property interest." *Ezekwo v. N.Y. City Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir.), *cert. denied*, 502 U.S. 1013 (1991).

Courts engage in a two-step analysis when resolving procedural due process claims. The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. *See Roth*, 408 U.S. at 569. If a protected interest is

identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. *Ware v. City of Buffalo*, 186 F. Supp. 2d 324, 331 (W.D.N.Y. 2001). The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Narumanchi v. Board of Trustees of Ct. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)).

Plaintiff's proposed claim that he was deprived of a constitutionally protected property interest by his transfer to the Tonawanda facility from the Aurora highway barn without the benefit of due process cannot support a claim of a due process violation. Although New York law creates a property interest for covered public employees in continued employment, at the same grade, absent just cause, it does not create an interest in retaining an assignment to a particular division. See N.Y. Civ. Serv. L. § 75; *Ciambriello*, 292 F.3d at 314. Here, plaintiff was not terminated from his employment, but was transferred to another facility. In *Perez v. City of New York*, 1997 WL 742536 (S.D.N.Y. Dec. 2, 1997), the court found "plaintiff has no protected interest in not being subject to disciplinary action" nor "a right to be free from transfer, suspension, or other changes in work environment or status . . . ." *Id.* at *2. "[W]here an employee has retained his rank and base pay after an administrative action, courts have not found an unconstitutional deprivation of property." *Caniello v. City of New York*, 2001 WL 11061, *1 (S.D.N.Y. Jan. 4, 2001).

Further amendment of the complaint to allege a cause of action for the violation of the Fourteenth Amendment right to due process would be futile because plaintiff has not

identified a protected property interest in continuing employment at the Aurora highway barn. Accordingly, the motion for leave to amend the complaint is denied.

## CONCLUSION

The defendants' motion to dismiss the amended complaint is granted, and the plaintiff's motion for leave to amend the complaint is denied. The Clerk is directed to enter judgment in favor of the defendants.

So ordered.

<div style="text-align: right;">
\s\ John T. Curtin  
JOHN T. CURTIN  
United States District Judge
</div>

Dated: February  13  , 2006  
p:\opinions\03-277.feb0206